IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESUS VELEZ PASTRANA and
JOHN G. IRWIN, JR.,

                Plaintiffs,

     v.

CITY OF PORTLAND,
a municipal corporation,

                Defendant.

Case No. 3:24-cv-00587-AB

OPINION & ORDER

David Thomas Wallace
Wallace Law Firm
7822 N Wabash Avenue
Portland, OR 97217

       Attorney for Plaintiffs

Michael Porter
Elisabeth C. Woodard
City of Portland, Office of the City Attorney
1221 SW 4th Ave, Ste. 430
Portland, OR 97204

       Attorneys for Defendant

1 – OPINION & ORDER

**BAGGIO, District Judge:**

Plaintiffs Jesus Velez Pastrana and John G. Irwin, Jr. bring this case against Defendant City of Portland. Plaintiffs bring one state negligence claim and one claim under 42 U.S.C. § 1983. Second Am. Compl. ("SAC") ¶¶ 10–14, 19–36, ECF No. 13. Defendant moves for summary judgment on Plaintiffs' claims. Def.'s Mot. Summ. J. ("Def.'s MSJ"), ECF No. 38. The Court heard oral argument on Defendant's motion on October 23, 2025. For the reasons described below, the Court grants Defendant's motion.[1]

## BACKGROUND

On April 29, 2022, Portland Police responded to a report of a stolen box truck, which was located in a parking lot of a local business—Tom's Bar—in Southeast Portland. Pls.' Resp. Ex. 3 ("Meyer Dep."), at 4:16–19, ECF No. 46-4. Portland Police dispatched officers "[t]o make contact with the stolen vehicle" and one aerial unit ("AIR1") to track the stolen box truck from above. *Id.* at 7:20; *see also* Elias Decl. ¶ 2 ("I was . . . responsible for operating the [AIR1] camera system and coordinating surveillance with ground units."), ECF No. 40. After arriving at Tom's Bar, the responding officers initially "wait[ed] for additional resources, given the size of the vehicle [they] were attempting to contact." Meyer Dep. 8:2–4.

Joseph Gary Sumner and two nonparty passengers had possession of the stolen box truck throughout the incident. Pls.' Resp. Def.'s MSJ ("Pls.' Resp.") Ex. 5 ("First Sumner Dep."), at 44:19–23, 95:18–96:11, ECF No. 46-6. On the day of the incident, Sumner "was high on meth[,]" which "create[d] paranoia." *Id.* at 39:25. While parked, one of the two nonparty

---

[1] The Court dismissed Defendants Joseph Gary Sumner and Shaun Lee Palmer for Plaintiffs' failure to prosecute their case against them. Order, ECF No. 34. Additionally, at oral argument, Plaintiffs withdrew their claim for negligent infliction of emotional distress against remaining Defendant City of Portland. Minutes of Proceedings, ECF No. 50. Therefore, Plaintiffs' remaining claims are their negligence and Section 1983 claims against Defendant City of Portland ("Defendant").

passengers alerted Sumner that police were nearby. *Id.* at 50:23–51:1. In response, Sumner "back[ed] up" the box truck to leave Tom's Bar. *Id.* at 51:1–2. While leaving Tom's Bar, Sumner saw at least one police officer*, id.* at 51:2, and testified that "when I seen [sic] that officer, my heart rate rose just as much as if you were to light up a meth pipe . . . ." Pls.' Resp. Ex. 6 ("Second Sumner Dep."), at 156:9–11, ECF No. 46-7.

Shortly before Sumner exited the parking lot of Tom's Bar, Officer Ryan Hernandez deployed spike strips in front of the stolen box truck. Pls.' Resp. Ex. 8 ("Hernandez Dep."), at 11:5–6, 13:25–14:5, ECF No. 46-9; *see also* Porter Decl. Ex. 4 ("AIR1 Video"), at 8:53 (aerial footage showing Officer Hernandez deploying spike strips). Officer Quincy Ho, another responding officer, testified that the spike strips were used "so the vehicle can't drive at its absolute full potential." Pls.' Resp. Ex. 7 ("Ho Dep."), at 19:23–24, ECF No. 46-8. Sumner drove the box truck over the spike strips, which "penetrated, at most, a single tire on the suspect vehicle—a right rear tire on the passenger side." Erickson Decl. ¶ 3, ECF No. 41. The spike strips, however, did not stop the stolen box truck; instead, Sumner kept driving, heading northbound on Southeast Cesar Chavez Boulevard. AIR1 Video 8:53–9:18.

As Sumner continued driving, the responding officers did not give chase. *See id.* at 10:12–17 (Officer Elias remarking "there are no officers pushing this guy, he's just driving like this on his own"); *see also* Second Sumner Dep. 178:9–10 ("[T]here was no point where it was an actual chase."). Instead, the responding officers drove on streets parallel to the streets on which Sumner was driving the stolen box truck. Hernandez Dep. 25:4–11. AIR1 continued to follow Sumner from above and provided updates on his location. Elias Decl. ¶ 3; Pls.' Resp. Ex. 4 ("Elias Dep."), at 20:20–21, ECF No. 46-5. Despite not being chased, Sumner drove at high speeds through residential areas of Southeast Portland and through multiple major intersections

without stopping. *See* AIR1 Video 10:17–24 (Officer Elias remarking that Sumner was driving "through a residential area in a box truck, doing about 40–50 [miles per hour]"). As Sumner was driving through Southeast Portland, he was not aware of AIR1's presence tracking him from above and never observed police lights or sirens during his flight from Tom's Bar. First Sumner Dep. 73:1, 92:20–23.

After roughly four minutes, Sumner had travelled two miles to the intersection of Southeast 26th Avenue and Southeast Pine Street. *See* AIR1 Video 11:52–12:04. Sumner entered this intersection without stopping. *Id.* A vehicle driven by Susannah Badger also entered the intersection at the same time as Sumner and struck the box truck's rear driver side. *Id.* at 12:04–18; *see also* Pls.' Resp. Ex. 9 ("Badger Dep."), at 25:9–12 (describing a diagram illustrating the collision between Badger's vehicle and the stolen box truck), ECF No. 46-10. Following the collision, Sumner lost control of the stolen box truck, which swerved down Southeast 26th Avenue and struck Plaintiffs as they were crossing the road. *See* AIR1 Video 12:04–12:18 (Officer Elias remarking that Sumner crashed "just south of [Southeast] Ash [Street] on [Southeast] 26[th Avenue]").

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendant moves for summary judgment, arguing first that Plaintiffs fail to show evidence of municipal liability under their state-created danger theory of liability. Def.'s MSJ 8–11. Defendant also argues that Plaintiffs' negligence claim similarly fails for lack of evidentiary support, and that Defendant is entitled to discretionary immunity. *Id.* at 16–23, 27–29. The Court grants Defendant's Motion for Summary Judgment.

## I.    State-Created Danger

Defendant moves for summary judgment on Plaintiffs' § 1983 claim because Plaintiffs do not establish evidence supporting their state-created danger theory of liability. Def.'s MSJ 8–11; Def.'s Reply 7–10, ECF No. 47. Plaintiffs disagree and respond that "[a] reasonable jury could

find that PPB officers affirmatively created or heightened the danger to Plaintiffs . . . ." Pls.'

Resp. 1, ECF No. 46.[2] The Court agrees with Defendant.

> Under 42 U.S.C. § 1983:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983. The Fourteenth Amendment generally "does not impose a duty on [the state]

to protect individuals from third parties." *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir.

2007). But under the state-created danger doctrine, a municipality can be held liable "when

government employees 'affirmatively place[ ] the plaintiff in a position of danger, that is, where

[their] action[s] create[ ] or expose[ ] an individual to a danger which he or she would not have

otherwise faced.'" *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (citing

*Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)). There are "two clear

requirements" that Plaintiffs must show to prevail on a state-created danger claim. *Patel v. Kent

Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). First, Plaintiffs must show some "affirmative

conduct on the part of the state in placing the plaintiff[s] in danger." *Id.* (quoting *Munger v. City

of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000)). Second, "the exception applies

only where the state acts with 'deliberate indifference' to a 'known or obvious danger.'" *Id.*

---

[2] Plaintiffs alleged in their SAC, but no longer argue, that Defendant is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See, e.g.*, SAC ¶ 26 ("[Defendant] acted pursuant to an expressly adopted official policy and/or a longstanding practice or custom of [Defendant]."). Now, Plaintiffs refer to their two remaining claims as "state-created danger and negligence claims . . . ." Pls.' Resp. 9. Counsel for Plaintiffs confirmed during oral argument that Plaintiffs' substantive due process claim rests on a state-created danger theory of liability, and not on *Monell*. Additionally, Plaintiffs further argue that Defendant is not entitled to qualified immunity, and Defendant agrees. *Id.* at 14–15; Def.'s Reply 17.

6 – OPINION & ORDER

(quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). The Court discusses each element in turn.

A.     Affirmative Conduct

Defendant argues that "Plaintiffs cannot show that the City took affirmative action that placed them in a position of danger they would not otherwise have faced." Def.'s MSJ 9. Plaintiffs respond that Defendant affirmatively acted through its officers by deploying spike strips. Pls.' Resp. 10. The Court agrees with Defendant.

To establish an affirmative act for purposes of the state-created danger doctrine, a plaintiff must show that, first, "[t]he affirmative act . . . create[s] an actual, particularized danger . . . ." *Hernandez*, 897 F.3d at 1133 (citing *Kennedy*, 439 F.3d at 1063). Second, "the ultimate injury to the plaintiffs must be foreseeable . . . ." *Id.* (citing *Lawrence v. United States*, 340 F.3d 952, 957 (9th Cir. 2003)). Third, "[t]he state must have taken actions that placed the plaintiff in a 'worse position' than he would have been in 'had [the state] not acted at all.'" *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023) (quoting *Pauluk v. Savage*, 836 F.3d 1117, 1124 (9th Cir. 2016)). But "[a]ffirmative state action that exposes a broad swath of the public to 'generalized dangers' cannot support a state-created-danger claim." *Id.* at 927 (quoting *Sinclair v. City of Seattle*, 61 F.4th 674, 676 (9th Cir. 2023)); *see also Hall v. City of Portland*, No. 3:22-CV-00074-HZ, 2022 WL 3646994, at *5 (D. Or. Aug. 22, 2022) ("[The plaintiff] was no more than a member of the 'public at large,' and any danger posed by police action (or inaction) was not directed specifically at him."). In affirming the district court in *Hall*, the Ninth Circuit added that "[i]n cases where our court has identified an affirmative state act that satisfies the first prong of our state-created danger test, law enforcement typically engaged in direct contact with the

victim." *Hall v. City of Portland*, No. 22-35705, 2023 WL 5527854, at *1 (9th Cir. Aug. 28, 2023).

Here, Plaintiffs fail to show that Officer Hernandez's deployment of spike strips created a particularized danger to Plaintiffs. Plaintiffs provide no evidence that the responding officers specifically directed their actions at Plaintiffs. Plaintiffs also do not argue that the responding officers ever engaged in direct contact with Plaintiffs. *See* AIR1 Video 8:53–12:18 (Sumner driving from Tom's Bar to the site of the collision two miles away). Instead, Plaintiffs merely provide evidence that the responding officers may have increased a risk to the general public, which falls short of showing that their actions created a risk *particular* to Plaintiffs.

Plaintiffs cite two "controlling" cases in support of their argument that "the affirmative act of deploying spike strips in a pedestrian-heavy area, coordinated with ground units and an overhead aircraft, foreseeably escalated the risk to civilians . . . ." Pls.' Resp. 9. First, Plaintiffs cite as an analogous case *Estate of Soakai v. Abdelaziz*, 137 F.4th 969 (9th Cir. 2025),[3] arguing that liability may be found when an officer's actions "'set in motion a chain of events' foreseeably leading to harm." Pls.' Resp. 10. But the court in *Estate of Soakai* explained that "[the plaintiffs'] state-created danger claim targets not the injuries caused by the crash itself but the *additional* risk faced by Plaintiffs *after* the crash due to delayed medical treatment." *Est. of Soakai*, 137 F.4th at 984. As to the initial crash involving the plaintiffs, the court only reiterated its general rule that "[a]ffirmative state action that exposes a broad swath of the public to

---

[3] In their briefing, Plaintiffs cite "*Estate of Soakai v. City of Oakland*, 77 F.4th 1103, 1115–16 (9th Cir. 2025)." Pls.' Resp. 9. No such case exists. Defendant argues that Plaintiffs mean to cite to the above-cited case, *Est. of Soakai v. Abdelaziz*, 137 F.4th 969 (9th Cir. 2025). Def.'s Reply 8. Plaintiff also attributes to this case a quote (i.e., "set in motion a chain of events") that the Court is unable to attribute to *Estate of Soakai* or any other case that the parties cite. Pls.' Resp. 10.

'generalized dangers' cannot support a state-created-danger claim." *Id.* (quoting *Polanco*, 76 F.4th at 927); *see also id.* at 983–84 ("[The defendants] argue that they did not create a 'particularized' danger because the high-speed chase 'threatened the safety of the public at large.' Were we focused on the danger wrought by the car chase alone, [the defendants] would have a valid point.").

Plaintiffs also cite *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011), to argue that Defendant is "liab[le] where police escalation removed the possibility of peaceful resolution and foreseeably caused harm . . . ." Pls.' Resp. 9. But Plaintiffs' argument fails for two reasons. First, *Glenn* is factually distinct. The facts in *Glenn* involved police officers' use of a bean bag gun and semiautomatic weapons against a victim in a home setting. *Glenn*, 673 F.3d at 869. Second, *Glenn* involved legally distinct issues; that is, whether the defendants used excessive force in violation of the Fourth Amendment and whether the defendants were entitled to qualified immunity. *See id.* at 870.

In all, the record in the instant case shows that the responding officers, at most, created a danger that exposed the public to a generalized danger. In other words, even if "the city may have exposed [Plaintiffs] to an actual danger through its affirmative acts, the danger was *not* particularized to [them]." *Hall*, 2023 WL 5527854, at *1. Accordingly, Plaintiffs fail to demonstrate the existence of an affirmative act that created an actual and particularized danger.

B.    Deliberate Indifference

Defendant argues that Plaintiffs fail to show that Defendant, through its officers, acted with deliberate indifference in deploying spike strips on the stolen box truck. Def.'s MSJ 10. Plaintiffs respond that Defendant acted with deliberate indifference because the responding

officers were required to—and did not—obtain "[s]upervisory authorization" or conduct "risk-balancing broadcasts." Pls.' Resp. 12. Again, the Court agrees with Defendant.

"Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Patel*, 648 F.3d at 974 (quoting *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). Deliberate indifference requires a plaintiff to prove that a defendant "had a culpable state of mind and intended wantonly to inflict pain . . . [and had] actual knowledge . . . of impending harm" that is "easily preventable." *Grubbs*, 92 F.3d at 899–900 (quoting *Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir. 1992)). "The deliberate-indifference inquiry should go to the jury if any rational factfinder could find this requisite mental state." *Patel*, 648 F.3d at 974.

Here, Plaintiffs fail to show that Officer Hernandez acted with deliberate indifference because Plaintiffs do not argue whether Officer Hernandez—or any other responding officer—possessed the requisite culpable mental state at the time of the incident. Plaintiffs also provide no evidence that Officer Hernandez actually knew of impending harm to Plaintiffs, or that he intended to inflict pain. Instead, the record supports a conclusion that the officers deployed spike strips with the intent to prevent Sumner from fleeing. The responding officers' testimony explains that they used spike strips "so the vehicle can't drive at its absolute full potential." Ho Dep. 19:23–24; *see also id.* at 23:23–24 ("We want this vehicle stopped and the occupant to get out."); Elias Dep. 14:5–7 (Officer Elias explaining that the use of spike strips is "always a good preemptive thing to do, to keep a car from running from you, or if it does run, to flatten the tires"). AIR1 footage provides further evidence that the responding officers discussed—for roughly seven minutes—whether to use spike strips and weighed factors such as Sumner's driving behavior, the responding officers' proximity to the stolen box truck, and their desired

outcome. *See* AIR1 Video 1:42–46 (Officer Elias radioing officers on the ground, "maybe we

could do a preemptive—maybe spike [the box truck] . . . ."); *id.* at 7:12–7:17 ("probably spike

[Sumner] coming out of the lot, I don't know how close you are."); *id.* at 7:32–36 ("Yeah,

[Sumner is] driving really mellow so we can get ahead of him and throw spikes . . . ."); *id.* at

8:36–40 ("Get some spikes out on [Southeast Cesar Chavez Boulevard] if you can, he'll kinda be

stuck in [the parking lot]."); *see also* Elias Decl. ¶ 3 ("I am the voice heard on the AIR1

video . . . advising on tactical options that might be used to detain and arrest the driver of the

stolen truck."). While Officer Hernandez testified that he did not "check in with anybody" before

deploying the spike strips, Hernandez Dep. 11:7–9, the record also shows that he was listening to

AIR1 updates at the time the other responding officers were discussing whether to deploy spike

strips, *id.* at 9:23–10:1, 10:12–22. This level of deliberation among the responding officers

supports a finding that the officers weighed the risks of using spike strips and ultimately

deployed them with the desired effect of immobilizing the stolen box truck. The record does not

support a finding that the responding officers intended to inflict harm.

　　　　Plaintiffs contend that the responding officers acted or failed to act in ways that

constituted deliberate indifference. First, Plaintiffs argue that "[s]upervisory

authorization . . . [was] required but absent . . . ." Pls.' Resp. 12. But Plaintiffs' evidence does

not support their assertion. For example, Plaintiffs argue that the responding officers violated

City of Portland Police Directive 630.05, *see generally* Pls.' Resp. Ex. 11 ("Directive 630.05"),

ECF No. 46-12, but the plain language of Directive 630.05 does not require supervisory

authorization before deploying spike strips.[4] Second, Plaintiffs argue that "risk-balancing [was]

---

[4] Section 3.2 of Directive 630.05 provides that "[t]he managing supervisor
will . . . declare if the pursuit is authorized to continue," but the "Definitions" section of
Directive 630.05 includes "stop/spike strips" as a "Vehicle Intervention Strateg[y]" which has a

required but absent . . . ." Pls.' Resp. 12. But, as mentioned above, the responding officers did

discuss whether to use spike strips for several minutes before Officer Hernandez deployed them.

*See* AIR1 Video 7:12–8:40. Third, Plaintiffs argue that Sumner "aimed for [Southeast]

Hawthorne [Boulevard]" and that the responding "[o]fficers knew forcing this route increased

pedestrian and vehicle exposure." Pls.' Resp. 11. But Plaintiffs provide no evidence that the

responding officers forced Sumner to drive in a particular direction, or that they knew that

Sumner would drive in the direction he did after leaving Tom's Bar. *See* Hernandez Dep. 23:12–

13 ("I can't control what a person does and how they choose to drive their vehicle.").

     In all, the record shows that the responding officers intended to slow or stop the stolen

box truck, not to cause harm to Plaintiffs. Plaintiffs do not offer sufficient evidence such that a

jury could reach a different conclusion. Therefore, the Court finds that Defendant, through its

officers, did not act with deliberate indifference. Because Plaintiffs fail to establish either

element of their state-created danger theory of liability, the Court grants Defendant's Motion as

to Plaintiffs' § 1983 claim.

## II. Negligence

     Defendant moves for summary judgment on Plaintiffs' negligence claim because (1) "no

reasonable jury could conclude that the City was on notice that such harm to Plaintiffs was

foreseeable[,]" (2) "the City's alleged conduct did not cause Plaintiffs' injuries[,]" and (3)

Plaintiffs' negligence claim is "barred by [Or. Rev. Stat. § ("ORS")] 30.265(6)(c) because [it]

arise[s] from conduct that constitutes a discretionary function."[5] Def.'s MSJ 20, 27. Plaintiffs

---

definition distinct from the Directive's definition of "pursuit" and for which supervisory
approval is not required. Directive 630.05 at 1, 3, 5.

    [5] Defendant also argues that no special relationship or independent duty exists in this
case. Def.'s MSJ 17–18. At oral argument, counsel for Plaintiffs confirmed that they are not
arguing that a special relationship exists here. Counsel for Plaintiffs did argue—for the first

respond that "[a] jury could find these acts breached duties under Oregon law, created an

unreasonable and foreseeable risk of harm, and substantially contributed to Plaintiffs' injuries[,]"

and that Oregon's discretionary immunity law does not apply to the "operational negligence"

present in this case. Pls.' Resp. 14, 16. While the Court finds that Defendant is not entitled to

discretionary immunity, under ORS 30.265(6)(c), Defendant is still entitled to summary

judgment because the responding officers' actions did not cause a foreseeable risk of harm to

Plaintiffs.

### A.    Discretionary Immunity

Defendant argues that it is entitled to discretionary immunity because Plaintiffs' claim

"arise[s] from conduct that constitutes a discretionary function." Def.'s MSJ 27. Plaintiffs

respond that Defendant is not entitled to discretionary immunity because such immunity "shields

only high-level policy decisions, not operational negligence." Pls.' Resp. 16. The Court agrees

with Plaintiffs and finds that discretionary immunity does not apply in this case.

Under the Oregon Tort Claims Act (OTCA), "every public body is subject to civil action

for its torts . . . ." ORS 30.265(1); *see also Jensen v. Whitlow*, 334 Or. 412, 416, 51 P.3d 599

---

time—that Defendant had an independent duty (1) not to violate Portland Police Bureau
Directive 630.05 and (2) to weigh the risks of engaging the stolen box truck. But Plaintiffs
provide no authority to support their assertion. Additionally, this argument does not appear in
Plaintiffs' SAC or Response brief. *See Fazzolari By & Through Fazzolari v. Portland Sch. Dist.
No. 1J*, 303 Or. 1, 17, 734 P.2d 1326 (1987) ("[U]nless the parties invoke a status, a relationship,
or a particular standard of conduct that . . . defines . . . the defendant's duty, the issue of liability
for harm . . . properly depends on whether that conduct unreasonably created a foreseeable
risk . . . of harm that befell the plaintiff."). Even if Plaintiffs did allege an independent duty,
"'[t]here is no duty so to control the conduct of a third person as to prevent him from causing
physical harm to another' *unless* there is a special relationship between the actor (defendant) and
an injured party (plaintiff)." *Buchler v. State By & Through Oregon Corr. Div.*, 316 Or. 499,
505, 853 P.2d 798 (1993) (quoting *Restatement (Second) of Torts* § 315 (Am. Law Inst. 1965)).
Because Plaintiffs do not allege an independent duty in their SAC, sufficiently brief the issue, or
cite any authority supporting their argument, the Court declines to discuss the issue further.

(2002) (finding the OTCA "abrogated, in part, the state's sovereign immunity"). ORS 30.265(1) further provides that a municipality may be subject to civil action for the torts "of its officers, employees and agents acting within the scope of their employment or duties." *Id.*

"Discretionary immunity applies to actions that embody 'a choice among alternative public policies by persons to whom responsibility for such policies have been delegated.'" *Ramirez v. Hawaii T & S Enters., Inc.*, 179 Or. App. 416, 419, 39 P.3d 931 (2002) (quoting *Miller v. Grants Pass Irrigation District*, 297 Or. 312, 316, 686 P.2d 324 (1984)). There are three criteria that a defendant must show to qualify for discretionary immunity:

> It must be the result of a *choice,* that is, the exercise of judgment; that choice must involve public *policy,* as opposed to the routine day-to-day activities of public officials; and the public policy choice must be exercised by a body or person that has, either directly or by delegation, the *responsibility* or authority to make it.

*Id.* The Court first clarifies the challenged conduct at issue and then determines that Defendant is not entitled to discretionary immunity because the conduct at issue involves routine-day-to-day activity of public officials.

i.      Challenged Conduct

The parties disagree about what conduct is at issue for purposes of determining whether Defendant is entitled to discretionary immunity. Defendant argues that "[t]he discretionary judgment at issue here was made not by the responding officers in the field, but by PPB leadership in developing and issuing Directive 630.05 . . . ." Def.'s MSJ 28. Plaintiffs disagree, arguing instead that the conduct at issue involved the "[d]ecisions to deploy spike strips, coordinate ground and air units, and continue active trailing in a pedestrian zone . . . ." Pls.' Resp. 16. The Court agrees with Plaintiffs that the conduct at issue here involves the actions of the responding officers, not Defendant's choice to enact Directive 630.05.

Under ORS 30.265, "public bodies are immune from *respondeat superior* tort liability if the *conduct of the employee whose acts are alleged to create the liability* involved the exercise of 'policy judgment.'" *Lowrimore v. Dimmitt*, 310 Or. 291, 294, 797 P.2d 1027 (1990) (emphasis added) (quoting *McBride v. Magnuson*, 282 Or. 433, 437, 578 P.2d 1259 (1978)). In *Lowrimore*, the plaintiff sued Marion County "for personal injuries allegedly sustained by the plaintiff when her vehicle was struck by an automobile driven by [a third party] as he was being pursued by a Marion County deputy sheriff." *Id.* at 293. In analyzing whether ORS 30.265(6)(c) precluded liability, the court identified the challenged conduct as the actions of the Marion County deputy sheriff. *See id.* at 296 ("A traffic officer's decision to pursue a vehicle such as the [third party's] vehicle, though discretionary in the sense that it involves the exercise of judgment and choice by the officer, is not one that qualifies its maker to immunity under [the statutory predecessor to ORS 30.265(6)(c)]."). In conducting its discretionary immunity analysis, the court in *Lowrimore* did not evaluate any departmental policy under which the Marion County deputy sheriff was acting.

Here, the Court finds that the challenged conduct involves the actions of the responding officers on the scene and that Defendant's decision to enact Directive 630.05 is not the "conduct . . . alleged to create the liability . . . ." *Id.* at 294. In other words, the parties do not dispute whether Defendant was negligent in enacting Directive 630.05. Rather, Plaintiffs challenge the conduct of the responding officers at the time of the incident. *See* Pls.' Resp. 12 ("PPB's own written directives—if followed—would have prohibited initiating a pursuit or deploying spike strips in this case.").

Defendant insists that "Plaintiffs' challenge to the consequences of a no-pursuit policy does not alter the discretionary nature of the decision to adopt it." Def.'s MSJ 29 (citing *Carillo*

*v. City of Portland*, No. 3:21-CV-01340-YY, 2022 WL 4243460 (D. Or. June 3, 2022), *report and recommendation adopted sub nom.*, No. 3:21-CV-1340-YY, 2022 WL 3715227 (D. Or. Aug. 29, 2022)). But Defendant's argument fails for two reasons. First, Plaintiffs do not "challenge the consequences of a no-pursuit policy[,]" *id.*; instead, they challenge the responding officers' choice "to deploy spike strips[,]" Pls.' Resp. 16. Second, the challenged action in *Carillo* is distinct from the challenged actions in this case. The plaintiff in *Carillo* challenged a decision by Portland's Mayor and "other unidentified municipal actors" to "order[] officers to stay out of sight and allow the protestors to express their emotions." *Carillo*, 2022 WL 4243460, at *8 (internal quotations omitted). The plaintiff in *Carillo* did not challenge the actions of the police officers on the scene, as Plaintiffs do here.

Because courts must review the "acts . . . alleged to create the liability[,]" the Court finds that the actions at issue are those of the responding officers, not Defendant's decision to enact Directive 630.05. *Lowrimore*, 310 Or. at 294.

ii.    Conduct Involving Public Policy or Routine Activity

Because the conduct at issue involves the actions of the responding officers on the day of the incident, Defendant's discretionary immunity defense fails on the second prong of the analysis.

In general, "the decision of a governmental official, employee, or body is entitled to discretionary immunity if a governmental person or entity made a policy choice among alternatives, with the authority to make that choice." *Westfall v. State ex rel. Oregon Dep't of Corr.*, 355 Or. 144, 157, 324 P.3d 440 (2014). But "the judgment . . . generally must take place at a relatively high level of public authority; the 'routine decisions which every employee must make,' even when they require judgment, do not qualify for discretionary immunity." *Ramirez*,

179 Or. App. at 420 (quoting *Stevenson v. State Dep't of Transp.*, 290 Or. 3, 14, 619 P.2d 247

(1980)). As is relevant here, although decisions made by police officers "involve[] the exercise

of judgment and choice[,]" their actions do not render a defendant immune from liability because

they are "routine decisions made by employees in the course of their day-to-day activities."

*Lowrimore*, 310 Or. at 296; *see also Westfall*, 355 Or. at 157 (quoting *Lowrimore*). "Although [a]

decision . . . may have been made pursuant to a county departmental policy, the decision itself is

not a policy judgment . . . ." *Lowrimore*, 310 Or. at 296.

Here, Defendant fails to prove the second prong of the discretionary immunity analysis

because the responding officers' conduct constituted "routine, day-to-day judgment[s] and not a

public policy choice." *Ramirez*, 179 Or. App. at 420 (citing *Lowrimore*, 310 Or. at 296). Because

such conduct does not render Defendant "immune from liability for the ensuing harm it causes,"

Defendant's discretionary immunity defense fails. *Id.* (citing *Lowrimore*, 310 Or. at 296).

B.    Negligence

Defendant also moves for summary judgment on the merits of Plaintiffs' negligence

claim. To prevail on a negligence claim under Oregon law, absent a showing of a special

relationship or other independent duty, a plaintiff must show each of the following elements:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is
> to an interest of a kind that the law protects against negligent invasion, (3) that
> defendant's conduct was unreasonable in light of the risk, (4) that the conduct was
> a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and
> plaintiff's injury was within the general type of potential incidents and injuries that
> made defendant's conduct negligent.

*Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 506, 244 P.3d 835 (2010) (quoting

*Solberg v. Johnson*, 306 Or. 484, 490–91, 760 P.2d 867 (1988)). The parties dispute whether

Plaintiffs' injuries were foreseeable and whether the responding officers' actions were a but-for

cause of Plaintiffs' injury. Def.'s MSJ 18, 20; Pls.' Resp. 13–14. The Court finds that Plaintiffs'

negligence claim fails because Defendant did not cause a foreseeable risk of harm to Plaintiffs.

Defendant argues that the record does not show "that a reasonable person in the position

of the City would have foreseen that these particular actions or inactions posed a risk of the type

of criminal harm to Plaintiffs." Def.'s MSJ 18. Plaintiffs argue that "[a] jury could find these

acts . . . created an unreasonable and foreseeable risk of harm . . . ." Pls.' Resp. 14. The Court

agrees with Defendant.

Foreseeability refers to the "generalized risk of the types of incidents and injuries that

occurred rather than the predictability of the actual sequence of events." *Fazzolari*, 303 Or. at 13.

In negligence claims arising from third-party criminal acts, "a trier of fact must be able to find

from concrete facts that a reasonable person in the position of the defendant reasonably would

have foreseen that the person or location and circumstances posed a risk of criminal harm to

persons such as the plaintiff." *Piazza v. Kellim*, 360 Or. 58, 81, 377 P.3d 492 (2016). The court

in *Piazza* also noted that, to prove foreseeability:

> Facts pertaining to the similarity, frequency, and recency of prior criminal acts,
> committed under the same or similar circumstances, or at or near the same location,
> and involving the same or similar types of victims, as well as the place and character
> of the location of the current criminal act, are all relevant to the determination.

*Id.* Notably, Oregon courts have been hesitant to find foreseeability based on "generalized

allegations" that are "attenuated" or "substantially separated in time and distance from the

pertinent events." *Id.* at 82–83. In *Buchler v. State By & Through Oregon Corrections Division*,

the court was hesitant to adopt a rule charging a defendant "with responsibility for all intervening

intentional criminal conduct that might conceivably occur . . . where there are no claimed facts

showing defendant's knowledge of unreasonable risk of danger to the particular plaintiffs

involved . . . [or] evidence to show any such knowledge by defendant." 316 Or. 499, 511, 853 P.2d 798 (1993).

Here, Plaintiffs fail to show that the responding officers knew of an unreasonable risk of danger to Plaintiffs. Specifically, Plaintiffs do not provide evidence that sufficiently establishes that the responding officers knew that their use of spike strips at Tom's Bar would cause Plaintiffs' injuries roughly two miles away. *See* AIR1 Video 8:53–12:09 (Sumner driving two miles from Tom's Bar to the site of collision). Additionally, Plaintiffs provide no evidence of "[f]acts pertaining to the similarity, frequency, and recency of prior criminal acts, committed under . . . similar circumstances, or at or near the same location, and involving the same or similar types of victims, as well as the place and character of the location of the current criminal act . . . ." *Piazza*, 360 Or. at 81.

In response, Plaintiffs rely on three parts of the record in support of their argument that Plaintiffs' injuries were foreseeable. First, Plaintiffs argue that the "[o]fficers knew [Southeast] Division [Street] and [Southeast Cesar Chavez Boulevard] is a pedestrian-heavy, high-traffic corridor." Pls.' Resp. 13. Second, Plaintiffs argue that Officer Hernandez "admitted" that public safety is not a consideration when deploying spike strips. *Id.* Third, Plaintiffs argue that there were "a bunch of people out" at the site of the crash and that it was "a pretty tight area." *Id.* (quoting Badger Dep. 15:15–17).

Even viewing these portions of the record in the light most favorable to Plaintiffs, Plaintiffs do not explain how the responding officers "reasonably would have foreseen that the . . . circumstances posed a risk of criminal harm to persons such as the plaintiff." *Piazza*, 360 Or. at 81. First, Plaintiffs do not explain why it matters that the area around Tom's Bar was "pedestrian-heavy" when Sumner struck Plaintiffs nearly two miles away. Second, even if public

safety was not part of the responding officers' protocol, the responding officers weighed the risks of deploying spike strips anyway. At the time, the record shows that the responding officers observed that "[Sumner was] driving really mellow" such that "[they] can get ahead of him and throw spikes . . . ." AIR1 Video 7:32–36. They also discussed that, by deploying spike strips, they hoped that Officer Hernandez would immobilize the stolen box truck. *See id.* at 8:36–40 ("Get some spikes out on [Southeast Cesar Chavez Boulevard] if you can, he'll kinda be stuck in [the parking lot]."). Third, even if there were "a bunch of people out" at the site of the collision and that it was a "pretty tight area[,]" Badger Dep. 15:15–17, Plaintiffs do not explain how the responding officers at Tom's Bar knew this information or that they would have foreseen that Sumner would have struck Plaintiffs where he did—two miles away from the deployment of the spike strips, *see Buchler*, 316 Or. at 511 (holding no foreseeability "where there are no claimed facts showing defendant's knowledge of unreasonable risk of danger to the particular plaintiffs involved" or "evidence to show any such knowledge by defendant."). At most, Plaintiffs' argument shows that the responding officers "mere[ly] 'facilitat[ed]' . . . an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force . . . ." *Buchler*, 316 Or. at 511–12. That showing alone is insufficient to support liability. *Id.* at 512.

Plaintiffs fail to provide sufficient evidence that the responding officers' conduct caused a foreseeable risk of harm to Plaintiffs. Accordingly, Plaintiffs' negligence claim fails, and Defendant is entitled to summary judgment.

///

///

///

**CONCLUSION**

The Court GRANTS Defendant City of Portland's Motion for Summary Judgment [38].

The Parties shall submit a joint proposed judgment within 14 days of this Opinion & Order.

IT IS SO ORDERED.

DATED this <u>15th</u> day of January, 2026.

*Amy M. Baggio*
_____
AMY M. BAGGIO
United States District Judge